**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ROBERT N. JOHNSON, | ) | |
| #N-27711, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17−cv−1308−DRH |
| vs. | ) | |
| | ) | |
| WEXFORD HEALTH CARE | ) | |
| SERVICES,  INC., | ) | |
| PINCKNEYVILLE CORRECTIONAL | ) | |
| CENTER, | ) | |
| MR. BALDWIN, | ) | |
| SHERRY BENTON, | ) | |
| JOHN/JANE DOE, | ) | |
| KAREN JAIMET, | ) | |
| CHRISTINE BROWN, | ) | |
| DOCTOR SCOTT, | ) | |
| JOHN DOE, | ) | |
| NURSE PRACTITIONER BOB, | ) | |
| ANGEL RECTOR, | ) | |
| JANE DOE, | ) | |
| NURSE LODDIE, | ) | |
| MARSHA HILL, | ) | |
| DAN, | ) | |
| JANE DOE, | ) | |
| LARUE LOVE, | ) | |
| THOMPSON, | ) | |
| SERGEANT JOHNSON, | ) | |
| JOHN DOE, | ) | |
| C/O GIBSON, | ) | |
| C/O FERNANDEZ, | ) | |
| C/O WILLIAMS, | ) | |
| JOHN DOE, | ) | |
| CAROL A. MCBRIDE, | ) | |
| CHARLES W. HECK, | ) | |
| MARKUS MYERS, | ) | |
| B. LIND, | ) | |
| LT. FRANK, and | ) | |
| D. FLATT, | ) | |

      **Defendants.**      )

<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, District Judge:**

Plaintiff Robert Johnson, an inmate in Pinckneyville Correctional Center ("Pinckneyville"), brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants have shown deliberate indifference to his medical needs in violation of the Eighth Amendment and violated his rights under the Americans with Disabilities and Rehabilitation Acts, among other things. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action

fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

**The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations[1]: in retaliation for Plaintiff's many grievances, defendants violated the ADA 504/Design Guide for prison wheelchair and ADA cell-space by illegally doubling up Pinckneyville's two-person wheelchair/physically challenged cells with sets of four, high aggression, general population, non-physically challenged inmates. (Doc. 1, p. 3). "IDOC and defendants conspiratorially and deliberately instigated and permitted the said non-physically challenged to proliferate an ongoing failure to protect reign of imminent danger in repeated extortion, theft, mayhem, and life and limb fear upon [Plaintiff's] life." *Id.* Three gang members living in the illegal four-man cell refused to relinquish the lower bunk, though Plaintiff had a lower bunk permit and none of them did. *Id.* One of them also told Plaintiff he thought

---

[1] The Court notes that Plaintiff's allegations were at times difficult to decipher. The facts listed herein are those the Court could glean from the Complaint without expanding upon Plaintiff's allegations, as well as direct quotes from the Complaint.

he recognized him and would check what his crimes were over the phone. *Id.* He told Plaintiff that if he did what the inmate thought he did, that would "be killing [him] real soon." *Id.*

Plaintiff is 59 years old, "gravel-eye blind, master arm and hand dexterity-impaired," has a heart condition and respiratory disorder, and suffers from "excruciating" hip, leg, and back pain and continued deterioration of his hips and back for which a wheelchair is required to function normally. *Id.* The Illinois Department of Corrections ("IDOC") has refused "to document felonious behavior of aggravated assaults and battery visited unprovoked upon him" in the high aggression general population of the prison for the past year and more, so Plaintiff "has sought in a forced Hopkins Choice the only left 2-Man physically challenged/wheelchair safety cell, in repeated disciplinary safety of punitive solitary confinement at the concomitant loss of accumulating good time credits, punitive segregation, not in excess of 6 months since IDOC has no protective custody unit anywhere to accommodate physically challenged and wheelchairs." (Doc. 1, p. 4).

Pinckneyville staff seldom if ever considered cellmate compatibility, per their "job guideline . . . 'Rule 300.'" *Id.* This exacerbated the imminent danger Plaintiff was in, as "he has [in] the past IDOC year been threatened 5 times to walk himself or die" because he has "been singled out as the man who killed kids in Chicago, Illinois." *Id.*

Plaintiff has left arm and left leg numbness. *Id.* Plaintiff has a third grade

education and no family support. *Id.* Plaintiff has been denied access to the law library by the law clerks. *Id.* He is unable to write his own grievances, which "has thwarted and inhibited his legal litigation activities against the IDOC." *Id.* Plaintiff has no free legal assistance or knowledge in civil and criminal litigation matters. *Id.*

From August 2016 to date, Plaintiff refused to cell in Pinckneyville's general population illegal four-man cells that Pinckneyville assigns him to for his many medical issues, given the imminent danger he faced there. *Id.* Plaintiff did this for his own safety and requested protective custody. (Doc. 1, p. 5). As a result of Plaintiff's grievances, however, IDOC and the defendants retaliated against him by failing to grant Plaintiff's protective custody requests and denying him "serious urgent care for his continued deteriorating hips and back in which are slowly becoming paralyzed with limited mobility level 10 pain excruciating." *Id.* They also disciplined Plaintiff with disciplinary reports for refusing general population housing for which the adjustment committee found him guilty. *Id.* Each time, they sanctioned him with 30 to 60 days solitary confinement and 30 to 45 days loss of good time credit. *Id.*

IDOC "discriminated against Johnson by non-compliance with its own IDOC policy sec. 501.310 'Requirements. Each maximum and minimum security shall maintain an area of placement of committed persons in protective custody.'" *Id.* IDOC also ignored "statute 730 ILCS 5/5-7-4 Protected Persons, 'the department shall establish rules and regulations for the protection of *** every

committed person." (Doc. 1, pp. 5-6). It has ignored these rules to save costs at the expense, suffering, and danger of all ADA physically challenged wheelchair inmates. (Doc. 1, p. 6). IDOC has also refused to upgrade its maximum security protective custody units with ADA certified ramps, grab rails, panic buttons, working elevators, and/or doors wide enough for wheel chairs. *Id.* IDOC therefore has "no protective custody processing for vulnerable ADAs." *Id.*

IDOC and "all its wardenships" encourage inmates to assault and batter other inmates, with the "widely known . . . knowledge" that they will be punished in a lenient manner so as to save IDOC money. (Doc. 1, p. 6). They avoid prosecuting inmates under 730 ILCS 5/3-6-5, which constitutes "statutory felonious concealment of crimes" and "obstruction of justice." *Id.*

Wexford Health Care Services, Inc. ("Wexford") and IDOC officials at Pinckneyville are deliberately indifferent to Plaintiff's serious medical conditions, including the "constant deterioration of his hips, back, and legs, in which his serious urgent medical needs/claims have placed him in 'imminent danger.'" *Id.* Plaintiff has been placed in an ADA wheelchair cell, which is being illegally used to house four men. (Doc. 1, p. 7). Plaintiff's medical records of his hip and back causing him excruciating pain and suffering have resulted in his being issued a low bunk low gallery permit and pain medication that does not relieve his discomfort. *Id.*

Plaintiff has sharp, stabbing relentless attacks of pain that cause him to pass out, uncontrollable muscle spasms, and zero mobility without the assistance

of a wheelchair. *Id.* Plaintiff has headaches, and he cannot function normally with respect to hygiene, putting on clothing, and eating. *Id.* Plaintiff has trouble holding food down due to nausea. *Id.* He cannot sleep, has "no comfort at all," and he spends "relentless hours in sitting position in fear that slightest wrong move will cause abnormal violent involuntary contraction of muscle convulsions, which started in 2009 but has been denied urgent medical attention since August 2016" in Pinckneyville by HCU Administrator Christine Brown, Nurse Practitioner Dr. Bob, Dr. Scott, Dr. Tim PA, Dr. Butalid, Dr. John Doe, Dr. John Doe, Dr. John Doe, Nurse Practitioner Rector, and Physical Therapist Dr. Dan. *Id.* Plaintiff received "no follow ups by any health care personnel." *Id.*

"HCU Rule of thumb" is for inmates "to request sick call three times [and] pay $5.00 each time before [the] nurse decides to all[ow] [a] medical issue to be examined by [a] doctor." *Id.* There is "no medication refill without sick call $5.00 co-pay" and inmates "wait 30 to 60 days before medication is refilled." *Id.* There is "nurse neglect by not recording inmate medical complaints/symptoms, refusal to schedule inmate for doctor appointments, et cetera." *Id.*

In 2016, Dr. Scott examined Plaintiff for "symptoms of burning, throbbing, shooting, unending pain to [his] hips, spine, and lower back with worsening loss of dexterity in the side of his body that had no end to the pain." *Id.* Dr. Scott referred Johnson to see an orthopedic specialist, but was soon no longer a doctor at Pinckneyville. *Id.* Each time Plaintiff inquires about his referral, he is told there is "no record of such doctor referral in his medical files," "no money to

afford a referral to an outside furlough," and Pinckneyville's Wexford staff doctors are specialists in orthopedic bone trauma and disease. (Doc. 1, pp. 7-8).

Plaintiff's sick call slips are not being answered, and he is repeatedly told by nurses that Pinckneyville does not have a permanent doctor. (Doc. 1, p. 8). Dr. Scott told Plaintiff that if he did not use his back, hips, and spine, he would eventually lose them. *Id.* Plaintiff's symptoms are worsening. *Id.* Plaintiff was forced to take himself to segregation to avoid assault from his three "gang member" cellmates, each of whom "had a knife-like shank of some kind," when they told him they would kill him and that he "might as well walk [himself] to segregation by now." *Id.* Plaintiff requested protective custody, but Pinckneyville interpreted Plaintiff's actions as "disobeying a direct order while disrupting the safety and security of this institution." *Id.*

Plaintiff claims that there is a "systemic custom and usage, institutionalized from one directorship to another, one wardenship to another, obsessed with retaliation in a whole entrenched staff schematic against complaining inmates" who file grievances about the wrongdoing of a director or warden who are then "systematically" labeled problem inmates to prevent them from complaining further. (Doc. 1, p. 9).

Plaintiff further claims that isolated confinement, under 730 ULCS 5/3-8-7, should not be used against vulnerable populations, should be restricted, and can foster psychological trauma, psychiatric disorders, or serious long-term brain damage. *Id.* He alleges that vulnerable populations include those 55 years of age

or older and individuals who are disabled with a mental illness. *Id.* Plaintiff also claims that individuals committed to protective custody should have comparable opportunities for activities, movement, and social interaction to those in the general population, but those opportunities are not provided in Pinckneyville's segregation units. *Id.* Plaintiff seeks monetary damages and a preliminary injunction directing medical care to be provided to him, for him to be placed in protective custody, and for the defendants to cease sanctioning him with unfounded disciplinary reports. (Doc. 1, pp. 9-10).

## Discussion

Before outlining Plaintiff's claims, the Court finds it appropriate to address Plaintiff's failure to include specific allegations against Baldwin, Benton, Jaimet, John/Jane Doe (Deputy Director), Jane Doe (Nurses 1-6), Loddie, Hill, Jane Doe (physical therapist), Love, Thompson, Johnson, John Doe (sergeant), Gibson, Fernandez, Williams, John Doe (C/O 1-6), McBride, Lind, Frank, and Flatt in the body of his Complaint, despite his having listed them among the defendants. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).

Where a plaintiff has not included a defendant in his statement of claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the

name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). And in the case of those defendants in supervisory positions, the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Because they are not included in the statement of claim, Baldwin (individual capacity only), Benton, Jaimet (individual capacity only), John/Jane Doe (Deputy Director), Jane Doe (Nurses 1-6), Loddie, Hill, Jane Doe (physical therapist), Love, Thompson, Johnson, John Doe (sergeant), Gibson, Fernandez, Williams, John Doe (C/O 1-6), McBride, Lind, Frank, and Flatt will be dismissed from this action without prejudice.

Further, Plaintiff has named the Pinckneyville Correctional Center, a division of the Illinois Department of Corrections ("IDOC"), as a defendant. However, no matter what relief Plaintiff seeks against Pinckneyville, his claims against it are barred because IDOC, as a state agency, is not a "person" that may be sued under § 1983, and neither are its divisions. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)); *see also* 42 U.S .C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

proceeding for redress . . . ."). Though IDOC is an appropriate defendant for ADA and/or Rehabilitation Act claims, the Court will not allow Plaintiff's ADA/Rehabilitation Act claims to proceed against Pinckneyville. Instead, to the extent Plaintiff has stated a viable ADA/Rehabilitation Act claim, the Court will allow it to proceed against the relevant IDOC official(s) in his, her, or their official capacities. *See* 2 U.S.C. § 12131(1)(b); *Jaros v. Illinois Department of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (the proper defendant to an ADA claim is the relevant state department or agency; the proper defendant is the agency or its director (in his official capacity)). Accordingly, Pinckneyville will be dismissed from this action with prejudice.

Finally, to the extent Plaintiff sought to bring claims against individuals or entities not included in the case caption, these individuals or entities will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). Individuals mentioned in the Complaint but not included in the case caption or list of defendants include: Dr. Butalid and Dr. Tim PA.

Moving to the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 9 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Defendants showed deliberate indifference to Plaintiff's serious medical needs involving deterioration of his hips, back, and legs and pain and immobility associated therewith in violation of the Eighth Amendment.

**Count 2 –** Defendants retaliated against Plaintiff for filing grievances by placing him in an overcrowded cell with violent inmates, refusing his requests for protective custody, issuing disciplinary reports against him, placing him in segregation, and refusing to provide him with needed medical care, in violation of the First Amendment.

**Count 3 –** Defendants violated the Americans with Disabilities Act and/or the Rehabilitation Act by using wheelchair designated two-person cells as four-person cells and housing high-aggression, general population inmates within them.

**Count 4 –** Defendants violated the Americans with Disabilities Act and/or the Rehabilitation Act by failing to maintain a protective custody unit that can accommodate physically challenged and wheelchair-bound inmates.

**Count 5 –** Defendants violated Plaintiff's due process rights by issuing him disciplinary reports for his refusing to be housed in general population and finding him guilty for those charges, resulting in his placement in solitary confinement and his losing of good-conduct credit.

**Count 6 –** Defendants violated Plaintiff's First Amendment right to access the courts by denying him access to the law library and not assisting him in legal matters.

**Count 7 –** Defendants failed to protect Plaintiff in violation of the Eighth Amendment by failing to grant his request for protective custody when he was under threat from his cellmates.

**Count 8 –** Defendants subject inmates to cruel and unusual punishment by encouraging them to assault one another by maintaining a policy under which inmates receive lenient punishment for assaults and are often not prosecuted for the attacks.

**Count 9 –** Defendants violated Plaintiff's due process and equal protection rights under article 1, section 2 of the Illinois constitution.

As discussed in more detail below, Counts 2, 4, and 5 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – Deliberate Indifference to Medical Needs

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

Assuming Plaintiff has satisfied the objective standard, he has failed to show that state officials acted with deliberate indifference to his medical needs. Throughout his Complaint, Plaintiff uses the passive voice or refers to "the defendants" or "IDOC officials," claiming that these non-specific groups denied him medical care or otherwise violated his rights. "Vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with

respect to those defendants." *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (citing *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (finding dismissal of named defendant proper where plaintiff failed to allege defendant's personal involvement in the alleged wrongdoings)).

Though Plaintiff specifically names Brown, Bob, several Dr. John Does, Rector, and Dan in connection with his claim that he has been denied urgent medical care, he has provided no information regarding how these individuals may have been personally involved in denying him such care. As previously noted, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual, nor is making vague, unsupported statements about them that are little more than legal conclusions. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Plaintiff has done no more than that with respect to these defendants, so his claim will not proceed as against them.

Plaintiff includes more information about the actions of Dr. Scott. Other than Scott's inclusion in the laundry list of medical care providers that allegedly "denied [him] urgent medical attention," however, Scott's actions appear to have been entirely positive and helpful to Plaintiff. (Doc. 1, p. 7). Scott allegedly examined Plaintiff and referred him to an orthopedic specialist. Soon thereafter, Scott was no longer a doctor at Pinckneyville. Plaintiff's allegations are therefore insufficient to support a deliberate indifference claim against Scott.

Finally, with respect to Wexford, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged

violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff has not alleged that any of the individual defendants either acted or failed to act as a result of an official policy espoused by Wexford. Therefore, Plaintiff cannot maintain a deliberate indifference claim against Wexford, and Count 1 shall also be dismissed against it.

Accordingly, Count 1 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 2 - Retaliation

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). A "prisoner can state a claim for retaliatory treatment by alleging a chronology of events from which retaliation can be inferred." *Jellis v. Hulick*, 422 F. App'x 548, 550 (7th Cir. 2011). However, the Seventh Circuit has rejected the notion that prisoners are *required* to allege a chronology of events at the pleading stage. *See McElroy v. Lopac,* 403 F.3d 855, 858 (7th Cir. 2005) ("we note that the district court required far too much of [the prisoner] in the first place. Our recent cases have rejected any requirement that

an inmate allege a chronology of events in order to state a claim of retaliation because such a requirement is contrary to the federal rule of notice pleading."); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (prisoner need not allege a chronology of events in order to state a claim for retaliation). In other words, allegations pertaining to a chronology of events from which retaliation can be inferred are sufficient but not required. "Instead, a plaintiff must allege only enough to put the defendants on notice and enable them to respond." *McElroy,* at 858. In this regard, certain defendants' allegedly retaliatory conduct and allegations regarding the constitutionally protected activity that motivated the retaliatory conduct are sufficient. *Id.*

Plaintiff claims that the defendants retaliated against him for filing grievances by placing him in an overcrowded cell with violent inmates, refusing his requests for protective custody, issuing disciplinary reports against him, placing him in segregation, and refusing to provide him with needed medical care. Plaintiff attached an adjustment committee report to his Complaint that shows that Defendants Myers and Heck subjected him to some of the allegedly retaliatory actions, including segregation. (Doc. 1, p. 19). Plaintiff will therefore be able to proceed with his retaliation claim as against these two defendants. Plaintiff does not successfully associate any other defendants with this claim, however, under the same reasoning as in Count 1.

Accordingly, Count 2 will proceed against Myers and Heck. It shall be dismissed without prejudice as against all other defendants.

## Count 3 – ADA/Rehabilitation Act

The ADA and Rehabilitation Act prohibit discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012). In order to make out a *prima facie* case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a). *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015).

The ADA applies to state prisons, and all such institutions receive federal funds. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998); *Jaros*, 684 F.3d at 667. Thus, the two statutory schemes are applicable to this situation. "Disability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself." *Jaros*, 684 F.3d at 672. Plaintiff has deterioration of his hips and back that inhibits his movement without a wheelchair, convulsions that prevent him from sleeping well, nausea that makes him incapable of holding food down, and headaches. Due to these issues, he is in extreme pain and cannot function normally with respect to hygiene, food, and

17

putting on clothing.  The allegations in the Complaint therefore suggest that he suffers from a disability as defined in the ADA and Rehabilitation Act.

Plaintiff has otherwise failed to state an actionable ADA and Rehabilitation Act claim under Count 3.  Plaintiff complains of his placement in "two-man cells" meant for those in wheelchairs and with physical disabilities that are being used to house four inmates, the majority of whom are violent general population inmates.  His only complaint about the cells specifically is that they are "illegal" and "in violation of ADA 504/Design Guide."  These are legal conclusions not otherwise supported by facts in the Complaint.  Plaintiff does not explain why housing four men in his cell affects him specifically because of his disability.  Instead, Plaintiff focuses on the general threat his cellmates posed to him.  Prisoners do not have veto power over the identity of their cellmates, however.  *Ricardo v. Rausch*, 375 F.3d 521, 528 (7th Cir. 2004).  Further, to the extent Plaintiff seeks to hold any of the defendants liable for failing to protect him from his cellmates, the Eighth Amendment, not the ADA and/or Rehabilitation Act, would be a more appropriate basis for such a claim.

Count 3 will therefore be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 4 - ADA/Rehabilitation Act

Plaintiff claims there are no protective custody units that can accommodate wheelchair-bound inmates.  He also claims that he has repeatedly requested protective custody due to the danger he faces from his cellmates, but he has been

denied protective custody and instead disciplined and placed in segregation because the protective custody cells will not accommodate him. At this early stage, the Court cannot say that these allegations are insufficient to state an ADA and/or Rehabilitation Act claim.

Notably, the only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity). "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA. *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (additional citations omitted). All of the named defendants, other than Defendant Baldwin in his official capacity as the Director of the Illinois Department of Corrections and Defendant Jaimet in her official capacity as the Warden of Pinckneyville,[2] will therefore be dismissed with prejudice from Count 4, as they are not susceptible to these claims under the ADA or Rehabilitation Act. Count 4 shall proceed against Baldwin and Jaimet in their official capacities only.

### Count 5 – Due Process

Plaintiff claims that his rights were violated by the defendants when he was issued repeated disciplinary tickets for refusing housing in response to his requests for protective custody. Plaintiff asserts that his being found guilty of these tickets and sanctioned with solitary confinement and loss of good conduct

---

[2] At this stage, the Court finds it appropriate to allow this claim to proceed against Director Baldwin in his official capacity, as IDOC's highest ranking official, and Warden Jaimet in her official capacity, because Plaintiff seeks injunctive relief, and Pinckneyville's warden will likely "be responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311 (7th Cir. 2011).

credit also violated his due process rights.

In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court recognized that some prisoner cases appear to straddle the line between what is actionable under 42 U.S.C. § 1983, and what falls under the purview of habeas corpus under 28 U.S.C. § 2254.

> Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); requests for relief turning on circumstances of confinement may be presented in a § 1983 action. Some cases are hybrids, with a prisoner seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum term of confinement.

*Muhammad*, 540 U.S. at 750–751.

*Muhammad* is premised upon two related decisions, *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). In *Heck*, the Supreme Court held that a Section 1983 claim for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not a cognizable claim until that conviction or sentence has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486–87. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court held that claims that "necessarily imply the invalidity of the deprivation of [an inmate's] good time credits" are not cognizable under Section 1983 unless the prison disciplinary decision has been invalidated, even though the restoration of credits is not sought as a remedy. *Id.* at 646–48.

*Balisok* is particularly instructive in this situation. Here, there are no specific defendants associated with Plaintiff's due process claim in the statement of claim. However, Defendants Heck and Myers are listed as the Hearing Committee on the only Adjustment Committee Final Summary Report attached to the Complaint as an exhibit. *See* (Doc. 1, p. 19). Plaintiff was found guilty in this hearing and disciplined with one-month segregation and revocation of three-months of good conduct credit, which he at least implies was in retaliation for his filing grievances. *Id.*

The good conduct credits revoked in this hearing directly associated with Heck and Myers were restored on November 13, 2017, according to the Disciplinary Reduction Notification Plaintiff includes as an exhibit to his Complaint. *See* (Doc. 1, p. 20). Thus, the Court will not consider Plaintiff's due process claim to be entirely barred under the reasoning in *Balisok*. However, to the extent Plaintiff seeks to challenge any hearings resulting in good conduct credit revocations that have not been reversed, such a claim is not cognizable until the revocations are invalidated via administrative remedy or habeas action.

Moving to the substance of Plaintiff's due process claim, in *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Seventh

Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the Complaint, Plaintiff implies that he was not provided the procedural protections outlined in *Wolff* because he was found guilty by the adjustment committee, Heck and Myers, in retaliation for his filing grievances. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a

meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Though this is a low standard, Plaintiff implies that it has not been met in this case, because he was found guilty in retaliation for his filing grievances and at least in part because there is no protective custody housing to accommodate his disabilities. There is a presumption that administrative review boards have acted properly in proceedings such as this one, and often claims such as this one are dismissed in later stages of the proceedings for lack of support, *see Higgason v. Lemmon*, 6 F. App'x 433, 435 (7th Cir. 2001) (inmate's unsupported allegations that prison disciplinary board was ordered to find inmate guilty was insufficient to overcome presumption that board discharged duties properly); *Snell v. Jackson*, No. 04–73883–DT, 2006 WL 212025, at *3–5 (E.D. Mich. Jan. 25, 2006). However daunting this presumption may be, it is a consideration for a later time, as it is enough that Plaintiff sufficiently alleged that Heck and Myers, as the adjustment hearing committee, acted improperly in causing him to be found guilty. This is sufficient to create a question as to whether Heck and Myers acted impermissibly in finding him guilty, and for this reason, this claim cannot be dismissed at this time.

## Counts 6, 7, and 8

Plaintiff does not successfully associate any defendants with his First Amendment access to courts claim, his Eighth Amendment failure to protect claim, or his Eighth Amendment cruel and unusual punishment claim under the

same reasoning as in Count 1. Counts 6, 7, and 8 will therefore be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 9 – Illinois Constitution**

Plaintiff also seeks to bring a claim under Article 1, Section 2 of the Illinois Constitution. The Illinois Constitution does not guarantee rights in the same manner as the United States Constitution—a provision of the Illinois Constitution cannot be the basis of a lawsuit unless it contains self-executing language establishing such a right. *Bourbeau v. Pierce*, No. 02-cv-1207, 2008 WL 370677, at *6 (S.D. Ill. Feb. 11, 2008). For example, Article 1 Section 17 of the Illinois Constitution says that its rights are enforceable without action by the General Assembly, while Sections 2 and 5 of Article 1 contain no such language. ILL. CONST. art. I, §§ 2 & 5; *Teverbaugh ex rel. Duncan v. Moore*, 724 N.E.2d 225, 228 (Ill. Ct. App. 2000); *Faulkner-King v. Wicks*, 590 N.E.2d 511, 515 (Ill. App. 1992) (recognizing that there is no private right of action for damages for violations of Article I, Section 2), *abrog. on other grounds by Blount v. Stroud*, 904 N.E.2d 1 (Ill. 2009).

Because Plaintiff seeks to bring a claim under Section 2 of Article 1, which does not support a private right of action for damages, Count 9 will be dismissed with prejudice as legally frivolous.

**Failure to Follow Policies**

Throughout the Complaint, Plaintiff claims various IDOC policies and state laws were not followed in violation of his rights. The Seventh Circuit Court of

Appeals, however,

> has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices. In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.

*Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (internal quotations and citations omitted); *see also Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Accordingly, any claim based on a defendant's failure to follow IDOC policies or even state law is insufficient to maintain a claim under § 1983.

### Pending Motions

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 3) which is **REFERRED** to a United States Magistrate Judge for a decision.

Plaintiff has filed a Motion for Preliminary Injunction, Motion for Protection Order (Doc. 4) which is **REFERRED** to a United States Magistrate Judge for a decision.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1, 3, 6, 7** and **8** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted as against all defendants.

**IT IS FURTHER ORDERED** that **COUNT 9** is **DISMISSED** with prejudice as against all defendants as legally frivolous.

**IT IS FURTHER ORDERED** that **COUNTS 2** and **5** shall **PROCEED** against **MYERS** and **HECK**.

**IT IS FURTHER ORDERED** that **COUNT 4** shall **PROCEED** against **BALDWIN** (official capacity only) and **JAIMET** (official capacity only).

**IT IS FURTHER ORDERED** that **BALDWIN** (individual capacity only), **BENTON**, **JAIMET** (individual capacity only), **JOHN/JANE DOE** (Deputy Director), **JANE DOE** (Nurses 1-6), **LODDIE**, **HILL**, **JANE DOE** (physical therapist), **LOVE**, **THOMPSON**, **JOHNSON**, **JOHN DOE** (sergeant), **GIBSON**, **FERNANDEZ**, **WILLIAMS**, **JOHN DOE** (C/O 1-6), **MCBRIDE**, **LIND**, **FRANK**, **FLATT**, **WEXFORD HEALTH CARE SERVICES, INC.**, **BROWN**, **BOB**, **JOHN DOE** (Doctors/MD 1-3), **RECTOR**, **SCOTT**, and **DAN** are dismissed without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **PINCKNEYVILLE CORRECTIONAL CENTER** is **DISMISSED** from this action with prejudice for the reasons stated herein.

**IT IS FURTHER ORDERED** that as to **COUNTS 2**, **4**, and **5**, the Clerk of Court shall prepare for **MYERS**, **HECK**, **BALDWIN** (official capacity only), and **JAIMET** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that

defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including for a decision on Plaintiff's Motion for Preliminary Injunction, Motion for Protection Order (Doc. 4). Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2017.12.12
13:57:01 -06'00'

**UNITED STATES DISTRICT JUDGE**